**CALIFORNIA DREDGING CO., et al., Plaintiffs.**

v.

**James C. SANDERS, et al., Defendants.**

**Civ. A. No. 85-3906.**

United States District Court, District of Columbia.

Nov. 3, 1986.

Joe Robert Reeder, Judith Bartnoff, J. Gordon Arbuckle, Washington, D.C., for plaintiffs.

Mary Coster Williams, Asst. U.S. Atty., Washington, D.C., for defendants.

MEMORANDUM

GESELL, District Judge

In this proceeding the Court is asked to declare invalid a regulation, 13 C.F.R. § 121.2 (1986), issued by the Small Business Administration ("SBA"), defining what constitutes a small business in the dredging industry eligible for favorable governmental procurement consideration under the pertinent provisions of the Small Business Act ("Act"), 15 U.S.C. §§ 631 *et seq.* (1982 & Supp. III 1985). Plaintiffs, a number of large and small dredging companies, contend that the regulation is arbitrary, capricious and contrary to law. The administrative record was filed and subsequently cross-motions for summary judgment have been briefed and argued. The basic facts describing the dredging industry on which SBA relied are not in dispute but the appropriateness of its small-business standard is sharply challenged.

The Small Business Act reflects the congressional purpose to promote competition

in the economy.[1] The Act is designed to encourage competition by enhancing the ability of small businesses to compete against larger concerns, through preferential set-asides on government contracts as well as loans and other assistance.[2] The Act defines "a small-business concern" as "one which is independently owned and operated and which is not dominant in its field of operation." It charges SBA with "making a detailed definition" of small businesses, based on the "dollar volume of business" and other criteria. 15 U.S.C. § 632(a). Pursuant to this statutory mandate, SBA has determined that size standards will "vary by industry with particular attention to the structure of the designated industry, Administration policy and the needs of the various Federal programs to which they apply," and has identified a number of specific factors it will consider.[3]

This latest size standard for the dredging industry arose out of a comprehensive SBA review of existing size standards for all industries that commenced in March 1980. *See* 45 Fed.Reg. 15,442 (1980). After lengthy proceedings SBA decided to retain most of the size standards, adjusting for inflation since 1975 when they were last updated, but including other alterations for some industries. *See* 49 Fed.Reg. 5,024 (1984).

SBA withheld decision, however, on the appropriate size standard for the dredging industry because it found "deep polarization within the industry." It noted that of the dredging firms that submitted comments, 28 favored a standard lower than the then-current size standard, which defined as "small" any dredging firm with gross annual revenues of $9.5 million or less, and 12 desired an increase reflecting a full adjustment for inflation. These 40 responses accounted for approximately one quarter of the firms in the industry. SBA ultimately announced that it would retain the $9.5 million size standard pending further review. *See id.* at 5,025–26; *see also* 49 Fed.Reg. 47,412–13 (1984). After agency investigation and further comment by interested parties, SBA issued a Proposed Final Rule on December 4, 1984 raising the dredging size standard to $13.5 million, an increase of 40% and one matching the increase in the size standard SBA had found appropriate for several general construction industries which present considerably different questions for analysis. *See* 49 Fed.Reg. 47,412–13 (1984). Following further comment by interested parties, on November 8, 1985, SBA adopted the regulation challenged here. *See* 50 Fed.Reg. 46,-418 (1985).

In work leading to issuance of the proposed rule, SBA's Size Standards Staff con-

---

1. The Act is grounded on the view that "[t]he essence of the American economic system of private enterprise is free competition. Only through full and free competition can free markets, free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment be assured. The preservation and expansion of such competition is basic not only to the economic well-being but to the security of this Nation." 15 U.S.C. § 631(a).

2. *See* 15 U.S.C. §§ 636 to 638. The Act states that to promote the "security and well-being" of the nation, "[i]t is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns," *id.* at § 631(a). In 1980 Congress reaffirmed that, "[f]or the purpose of preserving and promoting a competitive free enterprise economic system," it is "the continuing policy and responsibility of the Federal Government" to work to "foster the economic interests of small businesses; insure a

competitive economic climate conducive to the development, growth and expansion of small businesses; establish incentives to assure that adequate capital and other resources at competitive prices are available to small businesses; reduce the concentration of economic resources and expand competition; and provide an opportunity for entrepreneurship, inventiveness, and the creation and growth of small business." *Id.* at § 631a(a).

3. *See* 13 C.F.R. § 121.1(b). These factors include "maximum size of firms, average firm size, the extent of industry dominance by large firms, the number of firms, the distribution by firm size of sales and employees in the industry, the presence of Federal procurement, and relation to other SBA programs." The regulation indicates that "[t]he development of size standards is not an exact quantitative procedure" and that "[n]o single measure or simple numerical device is the basis for establishing size standards." *Id.*

ducted a comprehensive review of the general nature of the dredging industry and of various factors it deemed relevant to setting a size standard. *See Profile of the Dredging Industry for the Purpose of Setting a Size Standard,* June 4, 1984 (*"Profile"*) (Attachment 7 to Complaint). In its *Profile,* SBA recognized the existence of regional markets in the industry. It explained that "[d]redging is inherently limited to regional operations because the cost of transporting a dredge from region to region limits the ability to bid outside of a particular region."[4] As a result, it found that "regional as opposed to national markets have developed and the [Army] Corps [of Engineers] tends to set aside contracts based on the availability of small firms to bid on contracts within each region," *id.* at 7–8.

In reviewing the level of concentration in the dredging industry as one of six factors analyzed,[5] SBA concluded that viewed on a national level "dredging tends to be dominated by a few large firms to a greater extent than occurs in most other industries in construction." *Id.* at 9. It noted that ordinarily this would suggest the need for a higher size standard to give more small firms assistance against the industry giants. *See id.* But when SBA analyzed the industry within the regional markets it had defined, it observed wide variance in the market power of "small" dredging firms. SBA noted that in 1983, 22.4% of federal dredging dollars were for contracts set aside for small firms. Yet the percentage

of set-aside dollars varied widely by region. In three regions it was low: Gulf (2.4%), Northeast (7.5%) and Pacific (12.2%). In the Great Lakes region, it was somewhat higher (35.5%). It was considerably higher in the Inland (50.4%) and Southeast (59.6%) regions. *See Profile* at 7. SBA stated that these differences stem largely from differences in the scale of the work typically performed in each region.[6]

Based on this information and information contained in Table 4 of the Appendix to the *Profile,* documenting by region the share of each firm operating in the region, SBA concluded that the Gulf Coast and Northeast regions "have patterns of dominance suggesting that a higher size standard would be appropriate" because procurement there has "clearly been dominated by three or four firms and these firms are each large." *Id.* By contrast, it concluded that the Inland and Great Lakes regions "have patterns of dominance suggesting that a lower size standard would be appropriate," given that dominant firms in that region were already defined as "small." *Id.* at 10. SBA ultimately determined that the relatively high level of national concentration in the dredging industry should be disregarded for purposes of setting a size standard, because analysis of the experience in different regions produced "indeterminate results."[7]

SBA's *Profile,* which formed the basis for the final dredging size standard,[8] demonstrates that the regulation fails to satis-

---

**4.** *Profile* at 9. In support of this statement, SBA noted that "Table *3* in the appendix illustrates this phenomenon with only a few of the dominant firms being active in a major way in more than one market." *Id.*

**5.** For the other factors examined, *see supra* note 3.

**6.** SBA accounted for these differences as follows: "The reason for the continuing pattern of set-aside in the Southeast and to a lesser extent in inland areas is that these areas have work which can typically be performed by small firms. Dredging jobs are often set-aside based on the type of equipment required to perform a job. Heavy equipment jobs requiring hopper and dustpan dredging equipment must be unrestricted because small firms do not have this

type of equipment. Deep water jobs and those requiring very large operations are seldom set-aside. Contracts which must be performed in a short period of time are also usually unrestricted. Those types of jobs appear less often in the Southeast and Inland regions of the country than in other regions, and thus, more contracts can be set aside." *Id.*

**7.** *Profile* at 10. According to SBA, analysis of regional patterns provided "no clear guidelines to the revision of the size standard," *id.* This statement, however, was made in the context of the agency's desire to establish a single standard of nationwide applicability—a desire not supported under the Act by the administrative record.

**8.** *See* 49 Fed.Reg. 47,412–13 (1984).

fy statutory requirements. At the time SBA conducted its analysis, even the existing $9.5 million size standard defined as "small" at least six firms that are dominant within their regional market. Table 4 in the Appendix to the *Profile* documents the full range of regional small-firm dominance. In the Inland region, the largest and fourth-largest firms were defined as small. In the Great Lakes region, the third- and fourth-largest firms were small. In the Southeast region and the Pacific region, the fourth-largest firms were small.[9]

SBA clearly assumes that the four largest firms in any region must be considered dominant and thus appropriately classified as "large." In suggesting that a higher size standard would be desirable in the Gulf Coast and Northeast regions, it stated that it "would be cautious not to raise the size standard to a level at which any of the four dominant firms in that particular region would qualify as small."[10] And by suggesting that the "patterns of dominance" in the Inland and Great Lakes regions call for a lower size standard, *id.* at 10, SBA necessarily indicated that it considers the leading small firms dominant in those regions. But the Act definitely requires that a small business must be one "which is not dominant in its field of operation." 15 U.S.C. § 632(a). When squarely faced with this dilemma, SBA simply noted without explanation that it "has never considered varying the size standard on a regional basis as a viable alternative to a nationwide size standard." Its failure to do so in this case without rational explanation is arbitrary and an error of law.[11]

The Act does not specify that dominance is to be measured on a national scale and SBA may not limit its inquiry to promulgation of uniform national standards merely for convenience or because this approach may appear appropriate in the vast majority of cases. When most of the firms in an industry are regarded as being confined to a regional market by geographical and financial considerations, the small-business size standard cannot be one that gives a dominant firm in a regional market the preferred status of a small business.

In sum, SBA has failed to engage in rational rulemaking designed to ensure that the mandate of the Small Business Act is carried out in the dredging industry. Given the purposes of the Act previously reviewed, SBA cannot avoid its responsibility by dismissing considerations of dominance as "indeterminate" and refusing without explanation to consider the realities of competition in the regional markets it has found most truly reflect the competitive environment Congress has charged it to enhance by aiding small business.

The regulation must be enjoined and the matter remanded to SBA for further consideration in the light of this memorandum. Since the previous $9.5 million size standard is not challenged here, it remains in effect. Other procedural and substantive issues raised by plaintiffs' papers or during argument need not be considered. An appropriate Order is attached.

## ORDER

For reasons stated in a Memorandum filed herewith, Plaintiffs' Motion for Sum-

---

9. Additionally, in the Inland region firms 5, 9 and 10 are small; in the Great Lakes region firms 5 through 10 are small; and in the Southeast region firm 8 is small. The heavy percentage of set-asides recorded in these regions is unsurprising given that when a number of small firms are available in a region, federal procurement regulations require that a contract be set aside if the contracting officer reasonably expects that responsive bids at reasonable prices will be received from two responsible small businesses. *See* 48 C.F.R. § 19.502-2 (1985).

10. *Profile* at 9. Obviously, it may be that other firms currently defined as "small" should also be considered "dominant" within their region;

for example, the fifth-largest firm in the Inland region has 8.5% of the business, more than half the share of the largest firm (with 15.3%). *See* Appendix to *Profile*, Table 4, at 2.

11. SBA did indicate that the patterns of dominance in the Inland and Great Lakes regions "are not reassuring" to it and that it "would prefer that its assistance be focussed on firms which are not dominant in markets." *Profile* at 10. SBA's work in defining small businesses, however, is not a matter of preference; SBA is obliged to ensure that under the statute businesses which are dominant in their field of operation are not considered "small."

mary Judgment is granted; the portion of 13 C.F.R. § 121.2 (1986) promulgated in 50 Fed.Reg. 46,418 (1985), and establishing the small-business size standard for the dredging industry, is declared invalid as arbitrary and contrary to law; the administrative record is remanded to the Small Business Administration for further consideration; and Defendants' Cross-Motion for Summary Judgment is denied.

SO ORDERED.